UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN SOLOMON,

        *Plaintiff,*

v.

MERRICK GARLAND, *et al.*

        *Defendants.*

Case No.: 1:23-cv-00759-RJL

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

Reed D. Rubinstein (D.C. Bar No. 400153)
James K. Rogers (AZ Bar No. 027287)*
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: reed.rubinstein@aflegal.org
E-mail: james.rogers@aflegal.org
E-mail: michael.ding@aflegal.org

*\*Application for Pro Hac Vice forthcoming*

June 27, 2023

## TABLE OF CONTENTS

Introduction ................................................................................................................... 1

Standard of Review ....................................................................................................... 4

Argument ....................................................................................................................... 5

    I.    The Records are Presidential Records—Not Agency Records. .......................... 8

    II.    The Plaintiff Sufficiently Stated a Claim for Replevin. ................................ 10

    III.    The Plaintiff Established the Elements Necessary for Mandamus. ............... 12

Conclusion ................................................................................................................... 13

## INTRODUCTION

On June 22, 2022, the Plaintiff, Mr. John Solomon, requested that the Defendant National Archives and Records Administration make available to him every record covered by the Presidential Memorandum of January 19, 2021, regarding the declassification and publication of the "Crossfire Hurricane" materials contained a binder provided by the Department of Justice to the White House on December 30, 2020. Compl. ECF No. 1 ¶¶ 4-6; White House, *Memorandum of January 19, 2021: Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation,* 86 Fed. Reg. 6,843 (Jan. 25, 2021). Portions of the subject records were classified and had not previously been released to Congress or the public.

But "as was clear at the time," Crossfire Hurricane was part of a conspiracy, unprecedented in our Nation's history, between senior career government officials and Democrat party operatives to falsely smear the Republican presidential candidate as a Russian asset. *See* Special Counsel John H. Durham, *Report on Matters Related to Intelligence Activities and Investigations Arising Out of the 2016 Presidential Campaigns* at 8-10, 17-19, 81-84, 89-91, 170-71, 265-66, 305 (May 12, 2023), https://www.justice.gov/storage/durhamreport.pdf ("Durham Report").[1]

---

[1] A "serious lack of analytical rigor, apparent confirmation bias, and an over-willingness to rely on information from individuals connected to political opponents" caused the government "to act without appropriate objectivity or restraint in pursuing allegations of collusion or conspiracy between a U.S. political campaign and a foreign power." Durham Report at 18. For example:

1

Accordingly, the former President, the target of this conspiracy, determined "that the materials in that binder should be declassified to the maximum extent possible" and made public. 86 Fed. Reg. at 6,843.

---

- *Neither U.S. law enforcement nor the intelligence community appears to have possessed any actual evidence of collusion between Donald Trump and Russia.* Yet Crossfire Hurricane was opened "immediately" by an official with "pronounced hostile feelings toward Trump" - using unverified information from Australia as a pretext - without anyone ever having spoken to the persons who provided the information; any significant review of FBI or other U.S. intelligence agency databases; any witness interviews; or "using any of the standard analytical tools typically employed by the FBI in evaluating raw intelligence." Durham Report at 8-9 (emphasis added).
- Crossfire Hurricane was "a noticeable departure from how [the FBI] approached prior matters involving the Clinton campaign." Despite strong evidence that the Clinton campaign and its allies were running a disinformation operation to smear Donald Trump as a Russian asset, "the FBI never opened any type of inquiry, issued any taskings, employed any analytical personnel, or produced any analytical products in connection with the information." Notably, the Clinton plan "prompted the Director of the CIA to brief the President, Vice President, Attorney General, Director of the FBI, and other senior government officials about its content within days of its receipt." *Id.* at 9-10. In other words, President Obama, Vice President Biden, James Comey, and other key Obama Administration officials knew that the allegations of "Russia collusion" were a Clinton campaign trick.
- The FBI significantly relied "on investigative leads provided or funded (directly or indirectly) by Trump's political opponents. The Department did not adequately examine or question these materials and the motivations of those providing them, even when at about the same time the Director of the FBI and others learned of significant and potentially contrary intelligence." *Id.* at 18. And "*the FBI discounted or willfully ignored material information that did not support the narrative of a collusive relationship between Trump and Russia.*" *Id.* at 305 (emphasis added).

See also *Am. Farm Bureau v. E.P.A.*, 121 F. Supp. 2d 84, 106 (D.D.C. 2000) ("[C]ourts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation, without converting a motion to dismiss into a motion for summary judgment." (quoting *Black v. Arthur*, 18 F.Supp.2d 1127, 1131 (D. Or. 1998)).

2

Contrary to the Presidential Records Act's plain text mandating without exception that the former President's designated representative has access to Presidential records, *see* 44 U.S.C. § 2205(3), the Defendants have refused to turn over the records Mr. Solomon has requested.

The reasons given for refusal have evolved. At first, the Archives said it did not have the Crossfire Hurricane binder, as it was in the Department of Justice's custody. Compl. Ex. 2, ECF No. 1-2 at 13.

Then, the Archives said that it was required to treat the records as classified and that it "must consult with equity holding agencies to make declassification decisions." *Id.* at 11-14; *see also* E-mail from Gary Stern, Gen. Counsel, Nat'l Archives and Recs. Admin., to Kash Patel (July 14, 2022, 9:57 PM), Compl. Ex. 2, ECF No. 1-2 at 9 ("we in fact do have multiple copies of documents that appear to be from the binder"). The Archives' General Counsel Gary Stern explained that, while the records were retained "as Presidential records," the binder was "intend[ed to] remain with DOJ [as] a routine practice [when] undergoing declassification or similar review[.]" Compl. Ex. 2, ECF No. 1-2 at 1.[2] Nevertheless, the Archives assured Mr. Solomon

---

[2] This explanation contradicts the plain text of the former President's declassification order: "I hereby declassify the remaining materials in the binder. This is my final determination under the declassification review and I have directed the Attorney General to implement the redactions proposed in the FBI's January 17 submission and return to the White House an appropriately redacted copy." 86 Fed. Reg. at 6843. And Mr. Stern's apparent underlying premise—that records might be retained as Presidential records yet controlled as agency records—also contradicts the plain text of the Presidential Records Act. *See* 44 U.S.C. § 2201(2)(B).

3

that it would "have a fully releasable set of records" as soon as the Department of Justice completed its review. *Id*.

Now, the Defendants say that they "have correctly treated these records as agency records subject to the FOIA," thus, Mr. Solomon "has no right under the [Presidential Records Act.]." Defs.' Mem. P. & A. Supp. Mot. Dismiss. ECF No. 10-1 at 16. They assert that Mr. Solomon has no "right to (and demand for) immediate *possession*" of the records. *E.g.*, *id.* at 12 (emphasis in original).

## STANDARD OF REVIEW

A district court has jurisdiction if the cause either arises under the Federal Constitution, laws, or treaties (or falls within one of the other enumerated categories of Art. III, § 2); or is a "case or controversy" within the meaning of that section; or is described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *see also Axon Enterprises, Inc. v. Federal Trade Commission*, 143 S. Ct. 890, 914 (2023) (Gorsuch, J. concurring) (citations omitted). FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendants fair notice of what the claims are and the grounds upon which they rest. A complaint does not need detailed factual allegations. However, these allegations, which are assumed to be true, must be enough to raise a plausible right to relief, even if doubtful. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bowman v. Iddon*, 848 F.3d 1034, 1039 (D.C. Cir. 2017).

Concerning Rule 12(b)(6), Mr. Solomon's complaint survives a motion to dismiss if it is facially plausible even if the actual proof of the alleged facts seems improbable and recovery remote or unlikely. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015). Concerning Rule 12(b)(1), Mr. Solomon's complaint survives unless his claim is so insubstantial, implausible, foreclosed by prior decisions, or otherwise completely devoid of merit as not to involve a federal controversy. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)). Moreover, "it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Bell v. Hood*, 327 U.S. 678, 682 (1946). Finally, the Court may take judicial notice of facts on the public record when considering the defendants' motion. *See Covad Com. Co. v. Bell Atl. Corp.,* 407 F. 3d 1220, 1222 (D.C. Cir. 2005); *Am. Farm Bureau v. E.P.A.*, 121 F. Supp. 2d 84, 106 (D.D.C. 2000) ("[C]ourts are allowed to take judicial notice of matters in the general public record, including records and reports of administrative bodies and records of prior litigation, without converting a motion to dismiss into a motion for summary judgment." (quoting *Black v. Arthur*, 18 F.Supp.2d 1127, 1131 (D. Or. 1998)).

**ARGUMENT**

The Presidential Records Act preserves a former President's unqualified access to the defined records directly or through a designated representative. 44 U.S.C. § 2205(3). Courts, incumbent presidents, and Congress have access "subject to any

5

rights, defenses, or privileges which the United States or any agency or person may invoke." 44 U.S.C. § 2205(2). The Archivist and employees of the National Archives and Records Administration "who are engaged in the performance of normal archival work" also have access to presidential records "in the custody of the Archivist." 44 U.S.C. § 2205(1). But a former President's access to his records is limited neither by who has custody of the records nor by the "rights, defenses, or privileges" of anyone else, including the sitting President. Only the President "during whose term or terms of office such Presidential records were created" has an absolute right to access. 44 U.S.C. § 2201(5).

The Defendants' arguments depend entirely on the proposition that the Crossfire Hurricane binder and its materials were not Presidential records. But this proposition contradicts controlling Circuit law. *See Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 231 (D.C. Cir. 2013) (Garland, C.J.) ("the modified control test set forth in *United We Stand* is applicable") (citing *United We Stand America, Inc. v. I.R.S.*, 359 F.3d 595 (D.C. Cir. 2004)). The Defendants' arguments also contradict the plain language of the Presidential Records Act, which defines "Presidential records" to include "documentary materials ... received by the President [or] the President's immediate staff ... in the course of conducting activities which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2)(B).

The binder resulted from a Presidential directive, created to make public "in unclassified form" information that had not previously been provided to Congress or

6

the public regarding Crossfire Hurricane. During the declassification review, the President accepted certain redactions proposed by the FBI. He then directed the Attorney General to implement them, conduct a privacy review and return "an appropriately redacted copy" so that the "materials provided in the binder may be disclosed *by the White House*." 86 Fed. Reg. at 6843-44 (emphasis added). The President never relinquished his control over the binder; thus, the Department of Justice had no discretion concerning the Crossfire Hurricane records and materials.[3] *Id.* ("at my direction … ensure that materials … may be disclosed by the White House[.]").

Mr. Solomon, as the former President's designated representative, has a clear right to immediate possession of the subject records under the Presidential Records Act. The Defendants, for their part, have a clear duty to turn them over. No statute provides, and no case holds, that a Presidential record's temporary physical presence at an agency somehow transfigures that Presidential record into an agency record merely because the agency is redacting specified classified information and conducting a privacy review at the President's express direction.[4] *Accord.* 44 U.S.C. § 2201(2)(B). Therefore, the Defendants' motion should be denied.

---

[3] *See* Def's Mem. at 8, suggesting that Crossfire Hurricane materials subject to the January 19, 2021, declassification memorandum are being withheld from the public ("most of the materials have now been released in *redacted* form") (emphasis added).

[4] History, custom, and usage unequivocally demonstrate that prior to the Watergate controversy, Presidents exercised complete dominion and control over their presidential papers and records. *See Nixon v. United States*, 978 F.2d 1269, 1277 (D.C. Cir. 1992); Jonathan Turley, *Presidential Papers and Popular Government: The Convergence of Constitutional and Property Theory in Claims of Ownership and Control of Presidential Records*, 88 Cornell L. Rev. 651, 657-58 (2003) (footnotes

7

## I. The Subject Records are Presidential Records.

The D.C. Circuit's rule is that a "modified control test" should be applied to determine whether the subject Crossfire Hurricane materials are agency records or Presidential records. *Jud. Watch*, 726 F.3d at 231 (Garland, C.J.). The determinative factors are: 1) the intent of the record's creator and 2) the ability of the agency to use and dispose of the record as it sees fit. *See United We Stand*, 359 F.3d at 599-605.

The Crossfire Hurricane binder and its materials are unmistakably Presidential records by this test. The President (1) affirmatively directed the creation of the binder of Crossfire Hurricane materials for declassification review and with the intention of public release "by the White House," 86 Fed. Reg. at 6,843, then (2) determined that he would accept certain redactions proposed by the FBI, then (3) declassified the remaining materials, and then (4) directed the Attorney General to implement the FBI's proposed redactions, conduct a privacy review, and "*return to the White House* an appropriately redacted copy" of the binder. 86 Fed. Reg. at 6843 (emphasis added).

Critically, the Department of Justice had no discretion concerning its use or disposal of the binder and its contents. It was authorized only to provide specified

---

omitted). This stands to reason. The President is a Constitutional officer; unlike the agencies he oversees, he is generally not subject to the coercive power of Congress. Thus, the Presidential Records Act arguably raises separation of powers concerns. *See e.g., Humphrey's Executor v. United States,* 295 U.S. 602, 629-630 (1935); *Kilbourn v. Thompson,* 103 U.S. 168, 192 (1880). Those concerns become especially acute when an agency claims dominion over Presidential records, as the Defendants do here.

8

redaction and review services and then return the finished product to the President. *Id.*; *cf. Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 38 (S.D.N.Y. 2018) (applying the D.C. Circuit's modified control test in *Jud. Watch*) ("the President is the business owner … and the Secret Service operates those systems on behalf of the President, acting as a service provider.") (quoting the government's declaration), *aff'd sub nom. Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72 (2d Cir. 2020).

Nevertheless, the Defendants erroneously claim that once the binder of Crossfire Hurricane materials was given to the Department of Justice to redact "certain personally identifiable information," 86 Fed. Reg. at 6,843, the materials became agency records. Def's Mem. at 7 ("records in the binder that then-Chief of Staff Meadows transferred back to DOJ … properly remained with the Department of Justice as agency records subject to the Federal Records Act."). First, the transfer memorandum from Mr. Meadows to the Attorney General makes it clear that the White House retained dominion over the binder and its contents:

> We understand that the Office of Legal Counsel has advised that the Privacy Act does not apply to the White House and thus would not apply to any disclosure of documents by the White House. Nevertheless, we do not intend to disclose materials that would violate the standards of the Privacy Act and, in particular, materials the disclosure of which would constitute 'an unwarranted invasion of personal privacy." Accordingly, I am returning the bulk of the binder of declassified documents to the Department of Justice (including all that appear to have a potential to raise privacy concerns) with the instruction that the Department must expeditiously conduct a Privacy Act review under the standards that the Department of Justice would normally apply, redact material appropriately, and release the remaining material with redactions applied.

White House, *Memorandum from the Chief of Staff to the Attorney General, Privacy Act Review of Certain Declassified Materials Related to the FBI's Crossfire Hurricane*

9

*Investigation* at 1 (Jan. 20, 2021), available at https://vault.fbi.gov/crossfire-hurricane-part-01/crossfire-hurricane-part-04/view (last visited June 26, 2023). *Contra* the Defendants, the evidence is that the White House *always* viewed the binder and its contents as Presidential records.

Second, the Presidential Records Act defines "Presidential records" as "documentary materials" that are "created or received by the President, the President's immediate staff, or a unit or individual of the Executive Office of the President" and "which relate to or have an effect upon the carrying out of the constitutional, statutory, or other official or ceremonial duties of the President." 44 U.S.C. § 2201(2). This definition does not distinguish classified records from other records. Classified or not, the test is whether the record was prepared or received by the President or his staff in furtherance of the President's duties. In this case, the President directed the creation of the Crossfire Hurricane binder with the expressly stated intention that the records "be disclosed [publicly] by the White House," 86 Fed. Reg. at 6,843. Therefore, there are no statutory or other bases for the Defendants' claim that the President's command that the Department of Justice apply specified redactions, redact "certain personally identifiable information," and then return the binder to the White House magically transformed Presidential records into agency records. 86 Fed. Reg. at 6,843; *Memorandum from the Chief of Staff* at 1, *supra.*

## II.  Mr. Solomon has Stated a Claim for Replevin.

"The 'essence' of a replevin action under D.C. law is the 'wrongful withholding of the property in question.'" *United States v. Navarro*, No. CV 22-2292, 2023 WL

2424625, at *10 (D.D.C. Mar. 9, 2023) (quoting *Hunt v. DePuy Orthopaedics, Inc.*, 729 F. Supp. 2d 231, 232) (D.D.C. 2010). To "determine whether a party has stated a viable replevin claim," courts in this Circuit consider whether the "cause of action [is] brought to recover personal property to which the plaintiff is entitled, that is alleged to have been wrongfully taken by or to be in the possession of and wrongfully detained by the defendant." *Navarro*, 2023 WL at *10 (citing *BMO Harris Bank N.A. v. Dist. Logistics, LLC*, Civ. A. No. 20-3425, 2021 WL 7448012, at *4 (D.D.C. July 23, 2021) (internal quotations omitted). The right to immediate possession is an indispensable element of the claim. Defs.' Mem. P. & A. Supp. Mot. Dismiss. ECF No. 10-1 at 12 (citing D.C. Code 16-3702, 16-3703). However, a replevin claim need not specifically plead every element of D.C. Code § 16-3702. *See Navarro*, 2023 WL at *11 ("Dr. Navarro provides no support for the proposition that Courts must dismiss replevin actions whenever the plaintiff does not plead specific monetary damages.").

The Presidential Records Act states that the Presidential records of a former President "shall" be made available to the former President's designated representative. 44 U.S.C. § 2205(3). Mr. Solomon has alleged that he is entitled to immediate possession of the records, that the Defendants have wrongfully detained them from him, and that he has requested this Court to order the Defendants to ensure that the records "shall promptly be made available to" him. Compl. ECF No. 1 ¶¶ 34, 35, ii. Accordingly, his replevin claim is facially plausible and easily survives the Defendants' Rule 12(b)(6) motion.

### III. This Court has Mandamus Jurisdiction.

The Defendants argue that this Court lacks jurisdiction over Mr. Solomon's mandamus claim because he fails to establish that he has a clear right to relief under the Presidential Records Act and that they have a clear duty to act. Defs.' Mem. P. & A. Supp. Mot. Dismiss. ECF No. 10-1 at 13-14.

However, Mr. Solomon *does* have a clear right to relief because he fully complied with the Presidential Records Act's requirements, and the Defendants have refused to perform their "reciprocal duties" under the Act *N. States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 758 (1997). In compliance with 44 U.S.C. § 2205(3), Mr. Solomon, in his capacity as the former President's designated representative, requested that Archives make the Crossfire Hurricane records available to him. 44 U.S.C. § 2205(3); *see* Compl. ECF No. 1 ¶¶ 6, 26. The Archives has refused to do so. *See* Compl. ECF No. 1 ¶¶ 7, 27-32. At the same time, the Defendants' duty to act could "hardly be more clear." *N. States Power,* 128 F.3d at 758. Mr. Solomon has made his request, and the Presidential Records Act specifies what comes next – the Archives must turn over the Crossfire Hurricane binder and all its materials. 44 U.S.C. § 2205(3). The law does not allow the Archives to use the Department of Justice as a shield against compliance or for the Department of Justice to be a party to a scheme designed to provide the Archives with a trap door to avoid clear legal duties.

## CONCLUSION

The Defendants' motion to dismiss rests entirely on a foundation of sand that falsely presupposes that the subject records are agency records, not Presidential ones. The Defendants' arguments that Mr. Solomon failed to state a claim for replevin and establish the elements necessary for mandamus jurisdiction quickly crumble once the law is applied correctly. Because the Crossfire Hurricane binder and all its materials are Presidential records, Mr. Solomon has stated a claim for replevin and/or established the elements of mandamus jurisdiction. The Court should deny the Defendants' motion to dismiss for these reasons.

Dated: June 27, 2023                                       Respectfully submitted,

/s/ Michael Ding
REED D. RUBINSTEIN (D.C. Bar 400153)
JAMES K. ROGERS (AZ Bar No. 027287)*
MICHAEL DING (D.C. Bar 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: reed.rubinstein@aflegal.org
E-mail: james.rogers@aflegal.org
E-mail: michael.ding@aflegal.org

*Counsel for the Plaintiff*

**Application for Pro Hac Vice forthcoming*