**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JOHN SOLOMON,

               Plaintiff,

    v.

MERRICK GARLAND, *et al.*,

               Defendants.

No. 23-cv-00759-RJL

**DEFENDANTS' REPLY TO PLAINTIFF'S
STATEMENT OF UNDISPUTED MATERIALS FACTS**

     Defendants respectfully submit this response to Plaintiff's Statement of Undisputed

Material Facts, ECF No. 16-2.

1. Exhibit 1 is a true copy of the letter by former President Donald J. Trump designating Mr. Solomon as his representative for access to presidential records of the Trump administration pursuant to 36 C.F.R. § 1270.44(a)(4).

    **Response:**  Undisputed that Exhibit 1 is a true and correct copy of the letter by former

President Trump designating Mr. Solomon as his representative for access to presidential records

of the Trump administration.  Plaintiff's characterization that access is pursuant to 36 C.F.R.

§ 1270.44(a)(4) is a legal conclusion to which no response is required.

2. Exhibit 2 is a true copy of the emails referenced in paragraphs 46–47, 48–52, and 55–66 below.

    **Response:**  Undisputed.

3. Exhibit 3 is a true copy of former President Trump's January 19, 2021, declassification order published in the Federal Register at 86 Fed. Reg. 6,843.

**Response:** Undisputed that Exhibit 3 is a true and correct copy of the former President's

Memorandum of January 19, 2021 entitled "Declassification of Certain Materials Related to the

FBI's Crossfire Hurricane Investigation" (hereinafter "the January 19, 2021, Memorandum").

4. Exhibit 4 is a true copy of the January 20, 2021, memorandum from Mark Meadows to the Attorney General.

**Response:**  Undisputed.

5. Exhibit 5 is a true copy of Mr. Solomon's affidavit.

**Response:**  Undisputed.

6. At the President's request, the Department of Justice provided the White House with a binder of materials related to the Federal Bureau of Investigation's Crossfire Hurricane investigation on December 30, 2020. Ex. 1 at 1.

**Response:**  Undisputed.

7. Portions of the documents in the binder were classified and had not been released to Congress or the public. *Id.*

**Response:**  Undisputed.

8. The President requested the documents so that a declassification review could be performed and so that he could determine to what extent materials in the binder should be released in unclassified form. *Id.*

 **Response:**  Undisputed that this statement accurately reflects a statement in the January

19, 2021, Memorandum.  Defendants respectfully refer the Court to the full Memorandum for a

complete and accurate statement of its contents.

9. He determined that the materials in that binder should be declassified to the maximum extent possible. *Id.*

 **Response:**  Undisputed that this statement accurately reflects a statement in the January

19, 2021, Memorandum.  Defendants respectfully refer the Court to the full Memorandum for a

complete and accurate statement of its contents.

10. The President intended to make the binder public so that the American public would know what its government had done. Ex. 5 ¶¶ 15, 17–19, 28.

**Response**: Disputed. This statement is unsupported by admissible evidence; this statement appears in the cited paragraphs as hearsay or hearsay within hearsay, comprising Plaintiff's statements of Mr. Meadows's account of the former President's statements. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 15. Defendants note that the subjective views or intentions of the President—versus the instructions actually provided by his Chief of Staff—would be immaterial even if submitted in admissible form.

11. As part of the iterative process of the declassification review, under a cover letter dated January 17, 2021, the Bureau noted its continuing objection to any further declassification of the materials in the binder and, on a review that included Intelligence Community equities, identified the passages that it believed were most crucial to keep from public disclosure. Ex. 1 at 1.

**Response:** Undisputed that this statement accurately reflects a statement in the January 19, 2021, Memorandum. Defendants respectfully refer the Court to the full Memorandum for a complete and accurate statement of its contents.

12. Among other things, the binder contained embarrassing information about the Bureau's officials and about the government's conduct in the case. Ex. 5 ¶ 15.

**Response**: Disputed. This statement is unsupported by admissible evidence, as the cited paragraph comprises hearsay conveying Plaintiff's account of speculation by Mr. Meadows. Defendants also dispute that the content of the binder would be material even if admissible.

13. The President decided to accept the proposed redactions and declassified the rest of the binder. Ex. 1 at 1.

**Response:** Undisputed insofar as the January 19, 2021 Memorandum states: "I hereby declassify the remaining materials in the binder," but disputed insofar as the January 19, 2021 Memorandum expressly limited that declassification as follows:

3

My decision to declassify materials within the binder . . . does not extend to materials that must be protected from disclosure pursuant to orders of the Foreign Intelligence Surveillance Court and does not require the disclosure of certain personally identifiable information or any other materials that must be protected from disclosure under applicable law.

14. The President directed the Attorney General to make the redactions proposed in the Bureau's January 17 letter and return to the White House an appropriately redacted copy of the binder. *Id.*

**Response:**  Undisputed that the January 19, 2021, Memorandum contains such a direction.  However, Defendants dispute the materiality of this statement, in light of Mr. Meadows's superseding direction in his January 20, 2021, Memorandum that, instead of returning a redacted copy of the binder to the White House, the Department of Justice should use its discretion to apply appropriate redactions and then release a redacted version of that binder to the public.  *See* Pl.'s Mot., Ex. 4, ECF No. 16-6.

15. At this point, the binder contained about 2,700 pages and was approximately ten inches thick. Ex. 5 ¶ 9.

**Response:**  Disputed as unsupported by the cited evidence.  The cited paragraph is silent as to the page count of the binder, and the preceding paragraph of Plaintiff's declaration describes the binder as "a binder of several hundred pages of documents."  *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8.  Undisputed to the extent Plaintiff states that "[his] recollection" is that the binder was "about 10 inches thick," but Defendants dispute the characterization of this fact as material.

16. The Department of Justice Office of Legal Counsel opined that the Privacy Act did not apply to the binder. Ex. 4 at 1.

**Response:**  Disputed as unsupported by the cited evidence.  The cited memorandum does not refer to an opinion from the Department of Justice Office of Legal Counsel regarding the binder in particular.  Instead, the cited memorandum states:  "We understand that the Office of

Legal Counsel has advised that the Privacy Act does not apply to the White House and thus

would not apply to any disclosure of documents by the White House." *See* Pl.'s Mot., Ex. 4,

ECF No. 16-6.

17. At all times relevant, the President considered the binder a Presidential record and
intended to maintain control over it. Ex. 5 ¶ 17.

**Response**: Disputed.  This statement is unsupported by the cited evidence, which does

not state the former President considered the binder a Presidential record and intended to

maintain control over it. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 17.  Moreover, the cited

description of the former President's views comprises inadmissible hearsay, and the subjective

views or intentions of the President—versus the instructions actually provided by his Chief of

Staff—would be immaterial even if submitted in admissible form.

18. Sometime in mid-January 2021, White House Chief of Staff Mark Meadows informed
Mr. Solomon that former President Trump was going to authorize the declassification of
Crossfire Hurricane investigation documents. *Id.* ¶ 5.

**Response**:  Disputed as unsupported by admissible evidence; Plaintiff's account of Mr.

Meadows's statement comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 5.

Defendants also dispute the materiality of this statement.

19. Meadows told him that the White House had gathered the records from agencies, that
Trump was preparing a declassification order, and that the records would be made
available to him and other reporters before Trump's departure from office on January 20,
2021. *Id.* ¶ 6.

**Response**:  Disputed as unsupported by admissible evidence; Plaintiff's account of Mr.

Meadows's statements comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶

6.  Defendants also dispute the materiality of these statements.

20. In the final 48 hours before Trump left office, both the President and Meadows told Mr.
Solomon that the Crossfire Hurricane binder had been declassified. *Id.* ¶ 7.

**Response**:  Disputed as unsupported by admissible evidence; Plaintiff's account of Mr.

Meadows's and the former President's statements comprises inadmissible hearsay.  *See* Pl.'s

Mot., Ex. 5, ECF No. 16-7, ¶ 7.  Defendants also dispute the materiality of these statements.

21. On January 19, 2021, Meadows invited Mr. Solomon to the White House to review several hundred pages of declassified documents from the binder and to discuss a plan for the binder's release to the American public on the morning of January 20, 2021. *Id.* ¶ 8.

**Response**:  Disputed as unsupported by admissible evidence; Plaintiff's account of Mr.

Meadows's statements comprises inadmissible hearsay.  *See* Pl.'s Mot., Ex. 5, ECF No. 16-7,

¶ 8.  Defendants also dispute the materiality of these statements.

22. Mr. Solomon quickly thumbed through the binder to understand the nature and quantity of the records after being assured by Meadows and a White House lawyer that the binder had been declassified and after being shown a copy of the President's signed declassification order. *Id.*

**Response**:  Defendants dispute the materiality of this statement.  Defendants also object to

Plaintiff's proffered account of statements by Mr. Meadows and the unnamed White House

lawyer as inadmissible hearsay.  *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8.

23. Mr. Solomon saw lightly redacted versions of the fourth Crossfire Hurricane FISA warrants, a 2017 FBI 302 interview report with Christopher Steele, several tasking orders related to a second Confidential Human Source named Stefan Halper, and other documents. Id. ¶ 9.

**Response**:  Defendants dispute the materiality of the content of the binder.  Defendants

also object that this statement is unsupported by admissible evidence, as Plaintiff's description of

the contents of documents is hearsay, and that Plaintiff qualifies his describing "[his]

recollection" of what he saw.  *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8.  Finally, Defendants

object that the characterization "lightly redacted" is vague and ambiguous.

24. The records had markings consistent with declassified documents that Mr. Solomon had seen in prior Freedom of Information Act cases, such as lines through words like "NOFORN." Id. ¶ 10.

**Response**: Defendants dispute the materiality of the content of the binder. Defendants also object that this statement is unsupported by admissible evidence, as Plaintiff's description of any markings on the documents is hearsay.

25. Mr. Meadows told Mr. Solomon that the White House had made the final decisions on which passages to declassify and which to keep redacted in each document. *Id.*

**Response**: Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

26. Meadows discussed a strategy for releasing the documents to the public with Mr. Solomon via the "Just the News" website. *Id.* ¶ 11.

**Response**: Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

27. The strategy included getting him a copy of the binder on an embargoed basis so that his staff could begin scanning it on the evening of January 19, 2021, for release the following morning. *Id.*

**Response**: Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

28. It also included getting Mr. Solomon a smaller second set of records that he could write about that night. *Id.*

**Response**: Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

29. These records are attached as Appendix A to Mr. Solomon's affidavit.

**Response**:  Defendants dispute this statement as unsupported by admissible evidence; neither Plaintiff's Affidavit, nor any other evidence, describes the origin or content of Appendix A.   Defendants also dispute the materiality of this statement.

30. Either Mr. Solomon or his staff went to the White House early in the evening of January 19, 2021, to get the binder to begin scanning. *Id.* ¶ 12.

**Response**:  Defendants dispute this statement as vague and ambiguous, and unsupported by admissible evidence.  In the paragraph cited as the basis for this statement, Plaintiff's Affidavit states:  "My recollection is that either my colleague or I met outside the White House early in the evening of January 19, 2021[.]"  Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 12. Plaintiff's Affidavit reflects a lack of personal knowledge regarding the event described, if his colleague attended the meeting, and appears to be grounded in speculation, if Plaintiff's recollection is so unclear as to render him unable to testify as to whether he attended a meeting outside the White House, or someone else did in his stead.  Defendants also dispute the materiality of this statement.

31. A copy of the documents in the binder had been made by the White House and was given to them in a paper bag. *Id.*

**Response**:  Defendants dispute this statement as unsupported by admissible evidence.  As noted above, in the paragraph cited as the basis for this statement, Plaintiff's Affidavit states: "My recollection is that either my colleague or I met outside the White House early in the evening of January 19, 2021[.]"  Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 12.  Plaintiff's Affidavit reflects a lack of personal knowledge regarding the event described, if his colleague attended the meeting, and appears to be grounded in speculation, if Plaintiff's recollection is so unclear as to render him unable to testify as to whether he attended a meeting outside the White House, or someone else did in his stead.  Additionally, Plaintiff lacks personal knowledge based on which

he could testify as to the White House's actions with respect to the asserted copying.  Defendants

also dispute the materiality of this statement.

32. Separately, a Department of Justice envelope was delivered to Mr. Solomon's office
    containing the documents that he was permitted to write about that evening. *Id.*

**Response**:  Defendants dispute this statement as unsupported by admissible evidence.

The portion of Plaintiff's Affidavit cited in support of this statement states:  "Separately, a

Department of Justice envelope was delivered to my office around the same time with a small

subset of the documents I was permitted to write about that evening."  Pl.'s Mot., Ex. 5, ECF No.

16-7, ¶ 12.  There is no foundation for the Plaintiff's personal knowledge regarding either the

delivery or the alleged instructions for use of the documents, which likely would be inadmissible

hearsay.  Defendants also dispute the materiality of this statement.

33. The records in the Department's envelope were identical to those in the binder. *Id.* ¶ 14.

**Response**:  Defendants dispute the materiality of this statement.

34. Mr. Solomon scanned them and began writing a story. *Id.* ¶ 12.

**Response:**  Defendants dispute the materiality of this statement.

35. Mr. Solomon's staff began setting up a scanning operation for the entire binder to be
    released the next morning. *Id.* ¶ 13.

**Response:**  Defendants dispute the materiality of this statement.

36. As they were setting up the equipment and processes for scanning, they received a call
    from the White House asking that the documents—still under embargo—be returned
    because the White House wished to make some additional redactions to unclassified
    information consistent with the same standards established by the Privacy Act. *Id.*

**Response**:  Defendants dispute this statement as unsupported by the cited evidence.

First, Plaintiff's Affidavit qualifies this account by opening "My recollection is that."

Defendants therefore do not dispute that Plaintiff's recollection is that he and his staff received a

call from the White House as they were setting up the equipment and processes for scanning,

asking that the documents be returned.  The proffered description of the reasons for such a request comprises inadmissible hearsay, and Defendants dispute that facet of this statement as unsupported by inadmissible evidence.  Defendants also dispute the materiality of this statement.

37. One of the President's subordinates had decided on his own initiative that the records in the binder should be redacted under the same standards contained in the Privacy Act prior to public release, even though the Office of Legal Counsel had determined that the Privacy Act did not actually apply to the records. *Id.*

**Response**:  Defendants dispute this statement as unsupported by the cited evidence.  The cited paragraph in Plaintiff's affidavit states only that "the White House wished to make some additional redactions to unclassified information that might involve the Privacy Act," and says nothing about a subordinate of the President making such a decision "on his own initiative" or the Privacy Act not applying to the records.  *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 13. Additionally, the description of the White House's plans for the documents are inadmissible hearsay.

38. The scanning operation was halted, and the records returned to the White House. *Id.*

**Response:**  Defendants dispute the materiality of this statement.

39. Meadows promised Mr. Solomon that he would receive the revised binder. *Id.*

**Response:**  Defendants dispute this statement as unsupported by admissible evidence; the statement by Mr. Meadows is inadmissible hearsay.  Additionally, Defendants dispute the materiality of this statement.

40. This never occurred. *Id.*

**Response:**  Defendants object to this statement as vague and ambiguous.  Defendants do not dispute this statement insofar as it is intended to mean Plaintiff did not receive a copy of the full binder, with additional redactions based only on the Privacy Act.

41. On January 20, 2021, Mr. Meadows sent the Crossfire Hurricane binder to the Department of Justice with a cover memorandum directing the Attorney General to apply "the standards of the Privacy Act," redact accordingly, and then publicly release it. Mr. Meadows fully expected the Department to redact and disseminate the documents within, at most, a few days. Ex. 4 at 1; Ex. 5 ¶¶ 15–16, 28.

**Response:**  Disputed that the cited material comprises admissible evidence of the proffered statement, as the cited paragraphs comprise hearsay conveying Plaintiff's account of Mr. Meadows's statements.  Additionally, disputed insofar as Mr. Meadows's January 20, 2021, Memorandum indicates that Mr. Meadows was "returning the bulk of the binder," rather than the full binder on January 20, 2021.  *See* Pl.'s Mot., Ex. 4, ECF No. 16-6.  Undisputed, however, that Mr. Meadows "returned the bulk of the binder . . . to the Department of Justice . . . with the instruction that the Department must expeditiously conduct a Privacy Act review under the standards that the Department of Justice would normally apply, redact material appropriately, and release the remaining material with redactions applied."  *Id.*

42. The Department of Justice received the Crossfire Hurricane binder on the morning of January 20, 2021. Ex. 5 ¶¶ 16, 24, 30.

**Response:**  Undisputed that the Department of Justice received the bulk of the binder, per Mr. Meadows's January 20, 2021, Memorandum, on January 20, 2021.  *See* Pl.'s Mot., Ex. 4, ECF No. 16-6; *id.*, Ex. 5, ECF No. 16-4 at 1.  Disputed that the cited materials, or any part of the record, state that the Department received the bulk of the binder in the morning; however, the time of day when it was received is not material.

43. The President did not know that Mr. Meadows was taking such action. Id. ¶ 17.

**Response:**  Disputed as unsupported by admissible evidence; Plaintiff's account of the former President's knowledge is based on inadmissible hearsay.  Defendants also dispute the materiality of this statement.

44. The President did not authorize Mr. Meadows to send the binder to the Department of Justice for Privacy Act redactions or to modify his directions with respect to it. *Id.*

   **Response:**  Disputed as unsupported by admissible evidence; this statement is based on inadmissible hearsay.  Defendants also dispute the materiality of this statement.

45. On January 20, 2021, Mr. Meadows placed a copy of the documents in the binder sent to the Department of Justice in a box for transfer to the Archives as Presidential records. Ex. 5 ¶¶ 16, 24, 30.

   **Response:**  Disputed as unsupported by admissible evidence; this statement is based on inadmissible hearsay.

46. On June 17, 2022, Evan Corcoran, the former President's attorney, e-mailed Gary Stern, General Counsel of the National Archives and Records Administration stating that the former President intended to sign a letter designating Kash Patel and Mr. Solomon as his representatives, and informing him that they would like to begin reviewing the documents at the Archives on June 21, 2022. Ex. 2 at 15–16; Ex. 5 ¶ 20.

   **Response:**  Undisputed insofar as, on June 17, 2022, Evan Corcoran, the former President's attorney, e-mailed Gary Stern, General Counsel of the National Archives and Records Administration stating that the former President intended to sign a letter designating Kash Patel and Mr. Solomon as his representatives, and that "Kash and John would like to begin work reviewing documents at the Archives on Tuesday, June 21, 2022."  Disputed insofar as Plaintiff's statement implies that Mr. Corcoran indicated that Mr. Patel and Plaintiff would like to begin reviewing a specific set of documents, *i.e.,* "the" documents, on June 21, 2022.  *See* Pl.'s Mot., Ex. 2, ECF No. 16-4 at 16.

47. On June 17, 2022, Mr. Stern replied that the Archives could begin the process of providing them with access to Trump Presidential records once it received both the former President's letter and a specific description of the records for review. Ex. 2 at 14–15; Ex. 5 ¶ 21.

   **Response:**  Undisputed.

48. On June 19, 2022, the former President designated Mr. Patel and Mr. Solomon as his representatives for access to Presidential records from his administration. Ex. 1 at 1; Ex. 5 ¶ 21.

    **Response:**  Undisputed.

49. On June 22, 2022, Mr. Solomon e-mailed Mr. Stern stating that he understood the former President's authorization letter had been received and that the first request was for "a binder of documents from the Russia investigation that the President declassified with an order in his last few days in office. It is about 10 inches thick. It includes documents such as the last two approved FISA warrants the FBI sought in their fully declassified state, the debriefing documents, tasking orders and validation reports for confidential human sources Christopher Steele and Stefan Halper and other documents." Mr. Solomon further stated that he intended to make copies of every document that was declassified by the former President's order.  Ex. 2 at 14; Ex. 5 ¶ 23.

    **Response:**  Undisputed that this statement accurately describes and quotes the substance

of Plaintiff's email to Mr. Stern.

50. On June 23, 2022, Mr. Stern e-mailed Mr. Solomon that the Archives did not have the binder because it had been "returned" to the Department of Justice on January 20, 2021, in accordance with Chief of Staff Mark Meadows's memorandum to the Attorney General. Ex. 2 at 13–14; Ex. 5 ¶ 24.

    **Response:**  Undisputed that, in an email dated June 23, 2022, Mr. Stern wrote:  "Upon

conducting a search, we learned that the binder had been returned to the Department of Justice

on January 20, 2021, per the attached memo from Chief of Staff Mark Meadows to the Attorney

General, titled 'Privacy Act Review of Certain Declassified Materials Related to the FBI's

Crossfire Hurricane Investigation.'"  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 13.  Defendants

respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate

statement of its contents.  *See id.* at 13–14.

51. Mr. Stern also stated that the Archives was separately able to locate a box that contains roughly 2,700 "undifferentiated pages of documents with varying types of classification and declassification markings." Ex. 2 at 13–14; Ex. 5 ¶ 24.

**Response:**  This statement is vague and ambiguous as to the characterization "separately."  Undisputed that, in his email dated June 23, 2022, following his explanation that Mr. Meadows had returned the binder to the Department of Justice, Mr. Stern wrote: "Accordingly, we do not have the binder containing the declassified records. As we explained to [another PRA representative of former President Trump], what we were able to locate is a box that contains roughly 2700 undifferentiated pages of documents with varying types of classification and declassification markings, but we could not be certain of the classification status of any of the information in the box.'"  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 13–14. Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.*

52. Mr. Stern also stated that because the Archives could not ascertain the classification status of any of the information in the box that it would treat the contents of the box as "classified at the TS/SCI level." Ex. 2 at 13–14; Ex. 5 ¶ 24.

**Response:**  Disputed insofar as Plaintiff contends Mr. Stern stated NARA "would treat the contents of the box as 'classified at the TS/SCI level.'"  Undisputed that, in Mr. Stern's email dated June 23, 2022, after explaining that NARA "could not be certain of the classification status of any of the information in the box," Mr. Stern wrote: "We are therefore obligated under Executive Order 13526 to treat the contents of the box as classified at the TS/SCI level.'"  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 14.  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.* at 13–14.

53. The Archives could have ascertained the classification status of these records at any time simply by comparing the binder with the boxed records.

**Response:** Disputed as unsupported by admissible evidence.  Plaintiff's speculation as to what NARA could have done, and his characterization that a comparison could be accomplished "simply" is unsupported by citation to any evidence.

54.  The Archives never requested the binder from the Department.

**Response:** Disputed as unsupported by admissible evidence.

55. On July 7, 2022, Mr. Solomon e-mailed Mr. Stern stating that he believed the records held by the Archives were the same documents that had been declassified by the former President and that they were copied from the binder in preparation for release to the news media on the morning of January 20, 2021. Ex. 2 at 12; Ex. 5 ¶ 25.

**Response:**  Undisputed that, in his July 7, 2022 email, Plaintiff wrote:  "I have done some research and believe the pile of documents NARA possesses from the DOJ and FBI Russia case are the documents that President Trump declassified. They were copied from the binder in preparation to be released to the news media on the morning of Jan. 20."  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 12.  Defendants dispute the materiality of this statement, and respectfully refer the Court to the full text of Plaintiff's email for a complete and accurate statement of its contents. *See id.*

56. Mr. Solomon further requested a Mandatory Declassification Review of those documents to confirm that they are the same as the declassified records.  Ex. 2 at 12; Ex. 5 ¶ 25.

**Response:**  Undisputed that, in his July 7, 2022 email, Plaintiff made such a request.  *See* Pl.'s Mot., Ex. 2, ECF No. 16-4 at 12.  Defendants dispute the materiality of this statement, and respectfully refer the Court to the full text of Plaintiff's email for a complete and accurate statement of its contents.  *See id.*

57. Mr. Solomon further requested that Kash Patel—who had an active TS/SCI clearance and was familiar with the documents in the binder—simultaneously review them to confirm their provenance.  Ex. 2 at 12; Ex. 5 ¶ 25.

**Response:**  Disputed as to the characterization of Mr. Patel as being "familiar with the documents in the binder"; that characterization is not based on admissible evidence.  Plaintiff has no personal knowledge of whether this characterization is accurate, and indeed states in the cited email that "My research indicates [Mr. Patel] reviewed the declassified documents."  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 12.  Thus, it appears the characterization is based on inadmissible hearsay.  Undisputed, however, that, in his July 7, 2022 email, that Plaintiff wrote:  "Kash Patel has an active TS/SCI clearance. My research indicates he reviewed the declassified documents and he should be able to tell you whether the bunch are the documents from the binder that were covered by the president's declassification order."  *Id.*  Defendants dispute the materiality of this statement, and respectfully refer the Court to the full text of Plaintiff's email for a complete and accurate statement of its contents.  *See id.*

58. On July 12, 2022, Mr. Stern replied that "the Trump Presidential records" were not available for the Mandatory Declassification Review procedures under the Presidential Records Act. Ex. 2 at 11–12; Ex. 5 ¶ 26.

**Response:**  Undisputed that in the cited email, Mr. Stern wrote:  "under the Presidential Records Act, the Trump Presidential records are not available for public access requests and review, under either FOIA or the Mandatory Declassification Review (MDR) procedures, until five years after the President leaves office. See 44 U.S.C. 2204(b)(2)(A)."  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 11.  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.*

59. Mr. Stern also stated that the binder was now subject to a FOIA lawsuit, which meant that the Department of Justice was conducting the type of review Mr. Solomon requested and that he should try and obtain a copy of the records released by the Department of Justice in that case. Ex. 2 at 11–12; Ex. 5 ¶ 26.

**Response:**  Undisputed that in the cited email, Mr. Stern wrote:  " the binder that is now in DOJ custody is subject to FOIA, and I have been informed by DOJ that it is the subject of an

ongoing FOIA request and lawsuit, which means that DOJ is currently conducting the type of review that you have requested. The lawsuit is *Judicial Watch v. DOJ*, and attached is the most recent Joint Status Report that was filed with the court on May 31, 2022. It is my understanding that the 'approximately 880 pages [referred] for consultation to other federal agencies and agency components, including the Federal Bureau of Investigation ('FBI'),' is a reference to the binder. Accordingly, it probably makes most sense for you to try to obtain a copy of whatever the DOJ is releasing in this case." Pl.'s Mot., Ex. 2, ECF No. 16-4 at 11.  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.*

60. On July 14, 2022, Mr. Stern e-mailed Mr. Patel stating that, while the Archives did have multiple copies of documents from the binder, there was no clear organization or delineation to the various documents in the box. Ex. 2 at 9; Ex. 5 ¶ 27.

**Response:**  Disputed insofar as this statement characterizes Mr. Stern's email as stating definitively that the documents were from the binder.  Undisputed that, in the cited email, Mr. Stern wrote that NARA has "multiple copies of documents that *appear to be* from the binder," and that "there was no clear organization or delineation to the various documents in the box." Pl.'s Mot., Ex. 2, ECF No. 16-4 at 9 (emphasis added).  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.*

61. Mr. Stern also stated that the Archive's review of the box found instances of the same document being redacted differently, and some documents did not have the required declassification marking. Ex. 2 at 9; Ex. 5 ¶ 27.

**Response:**  Undisputed.  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents.  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 9.

17

62. Mr. Stern also stated that the binder sent to the Department of Justice by Mr. Meadows for the specific purpose of Privacy Act redactions and public release was a federal record managed separately under the Federal Records Act. Ex. 2 at 9; Ex. 5 ¶ 27.

**Response:**  Disputed that Mr. Stern so stated, except insofar as he wrote:  "under the Presidential Records Act, NARA maintains and preserves the Presidential records of the Trump Administration that were transferred to us at the end of the President's term. The binder that was sent back to DOJ is a federal record of that agency, which is managed separately under the Federal Records Act."  Pl.'s Mot., Ex. 2, ECF No. 16-4 at 9.  Defendants respectfully refer the Court to the full text of Mr. Stern's email for a complete and accurate statement of its contents. *See id.*

63. On August 14, 2022, Mr. Solomon e-mailed Mr. Stern stating that the declassified Crossfire Hurricane records were presidential records and asking what efforts had been made to retrieve them from the Department of Justice. Ex. 2 at 2; Ex. 5 ¶ 29.

**Response:**  Undisputed that this statement accurately reflects a portion of Plaintiff's August 14, 2022 email to Mr. Stern.  Defendants respectfully refer the Court to the full text of Plaintiff's email for a complete and accurate statement of its contents Pl.'s Mot., Ex. 2, ECF No. 16-4 at 2.

64. On August 17, 2022, Mr. Stern replied stating that the "bulk of the binder" returned according to Meadows's January 20, 2021, memorandum was intended to remain with the Department of Justice. Ex. 2 at 1; Ex. 5 ¶ 30.

**Response:**  Undisputed that, in the cited email, Mr. Stern wrote:  "As per his January 20, 2021, memo, Chief of Staff Meadows returned the 'bulk of the binder' to DOJ and instructed them to conduct a Privacy Act review and 'release the remaining material with redactions applied,' thus intending that those documents remain with DOJ (which, fyi, is a routine practice for agency records that are undergoing declassification or similar review by other agencies or the

White House)." Pl.'s Mot., Ex. 2, ECF No. 16-4 at 1.  Defendants respectfully refer the Court to

the full text of Mr. Stern's email for a complete and accurate statement of its contents.  *See id.*

65. Mr. Stern also stated that while the White House separately retained copies of those
documents as Presidential records, the records were "not in an easily discernible
manner." Ex. 2 at 1; Ex. 5 ¶ 30.

**Response:**  Undisputed that, in the cited email, Mr. Stern wrote:  "The White House did,

however, retain copies of the documents as Presidential records, although, as we've noted, not in

an easily discernible manner (and, of course, without the Privacy Act redactions)."  Pl.'s Mot.,

Ex. 2, ECF No. 16-4 at 1.  Defendants respectfully refer the Court to the full text of Mr. Stern's

email for a complete and accurate statement of its contents.  *See id.*

66. Mr. Stern also stated that he had asked the Department of Justice to complete its review
as quickly as possible and release the records, as they were subject to a FOIA lawsuit. Ex.
2 at 1; Ex. 5 ¶ 30.

**Response:**  Disputed insofar as Plaintiff characterizes Mr. Stern's request as asking the

Department to complete its review "as quickly as possible" *because* they were subject to a FOIA

lawsuit.  Undisputed that, in the cited email, Mr. Stern wrote:  "I have asked DOJ to complete its

review as quickly as possible, so that we can all have a fully releasable set of records. But, as

previously noted, the documents are now the subject of a FOIA lawsuit with DOJ."  Pl.'s Mot.,

Ex. 2, ECF No. 16-4 at 1.  Defendants respectfully refer the Court to the full text of Mr. Stern's

email for a complete and accurate statement of its contents.  *See id.*

67. The Bureau has been releasing Crossfire Hurricane records under the Freedom of
Information Act and posting them online at https://vault.fbi.gov/crossfire-hurricane-part-
01. Ex. 5 ¶ 31; Defs.' Mot. Dismiss 9, ECF No. 10-1.

**Response:**  Undisputed.

68. A comparison of records from the binder (Appendix A of Mr. Solomon's Affidavit) and the records in the FBI Vault (Appendix B of Mr. Solomon's Affidavit) demonstrates that the FBI Vault records have been altered with additional redactions. Ex. 5 ¶¶ 31–33.

**Response:**  Disputed insofar as there is no admissible evidence supplying foundation for Plaintiff's assertion that Appendix A to Plaintiff's Affidavit comprises "records from the binder." *See supra* Response to ¶ 29.  Undisputed insofar as documents in Appendix B contain redactions in addition to those present in the versions of those documents included in Appendix A.  Defendants dispute the materiality of this statement.

69. The FBI Vault records are different from the records in the Crossfire Hurricane binder Mr. Meadows sent to the Department on January 20, 2021, for Privacy Act redactions and public release. *Id.*

**Response:**  Disputed insofar as there is no admissible evidence supplying foundation for Plaintiff's assertion that Appendix A to Plaintiff's Affidavit comprises "records in the Crossfire Hurricane binder Mr. Meadows sent to the Department on January 20, 2021." *See supra* Responses to ¶¶ 29, 68.  However, undisputed insofar as the records posted to the FBI Vault contain redactions of information protected from disclosure under FOIA, and that at least some of those redactions would not have been present in the version of the binder that Mr. Meadows returned to the Department.

70. The Department has not complied with Mr. Meadows's instructions in his memorandum of January 20, 2021.

**Response:**  Disputed as vague and ambiguous as to what Plaintiff intends by "complied," and as unsupported by citation to any evidence.

71. The Department currently retains possession of the Crossfire Hurricane binder and will not send it to the Archives. Ex. 2 at 1.

**Response:**  Disputed as vague and ambiguous, with respect to Plaintiff's reference to "the Crossfire Hurricane binder."  Undisputed that the Department retains "the bulk of the

binder," which Mr. Meadows returned, accompanying his January 20, 2021, Memorandum.  Pl.'s

Mot., Ex. 2, ECF No. 16-4 at 1.

72. Mr. Solomon has been denied access to the binder. Defs.' Mot. Dismiss 18, ECF No. 10-
1.

**Response:**  Disputed as vague and ambiguous, with respect to Plaintiff's reference to

"the binder."  Insofar as Plaintiff refers to "the bulk of the binder," which Mr. Meadows returned

to the Department of Justice, undisputed that Plaintiff has not had access to those materials

because "as a designated PRA representative of President Trump, [he] may receive access to the

Presidential records of the Trump Administration that have been transferred to NARA under the

Presidential Records Act," and those materials were not so transferred.  Pl.'s Mot., Ex. 2, ECF

No. 16-4 at 1, 2.

73. The Defendants say that the Crossfire Hurricane binder is an agency record subject to the
Freedom of Information Act and that Mr. Solomon has no right to it under the
Presidential Records Act.  *Id.*

**Response:**  Disputed as vague and ambiguous, with respect to Plaintiff's reference to

"the Crossfire Hurricane binder."  Insofar as Plaintiff refers to "the bulk of the binder," which

Mr. Meadows returned to the Department of Justice, undisputed that Plaintiff's statement

accurately reflects Defendants' position.  For a complete and accurate statement of the

Defendants' position regarding the status of the subject materials, Defendants respectfully refer

the Court to the Defendants' motion to dismiss, cited by the Plaintiff, as well as the motion for

summary judgment submitted concurrently herewith.

Dated:  September 7, 2023                    Respectfully submitted,


                                            BRIAN M. BOYNTON
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
                                            Deputy Director
                                            Federal Programs Branch

                                            */s/  Julia A. Heiman*
                                            JULIA A. HEIMAN (D.C. Bar No. 986228)
                                            Federal Programs Branch
                                            U.S. Department of Justice, Civil Division
                                            1100 L Street, N.W.
                                            Washington, DC  20005
                                            Tel. (202) 616-8480 / Fax (202) 616-8470
                                            julia.heiman@usdoj.gov
                                            *Attorneys for Defendants*