**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN SOLOMON,

        *Plaintiff*,

v.

MERRICK GARLAND, *et al.*

        *Defendants*.

Case No. 1:23-cv-00759-RJL

**THE PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**Introduction**

    This case has been extensively briefed. At bottom, the Defendants justify denying Mr. Solomon access to the former President's declassified Crossfire Hurricane binder and records on the grounds that the binder containing them "no longer exists." Defs.' Mem. P. & A. Supp. Cross-mot. Summ. J., ECF No. 18-1 at 8. They claim that when Mr. Meadows sent Presidential records to the Department of Justice for Privacy Act redactions and public release, he unwittingly transformed them into agency records. And they suggest that the President's Crossfire Hurricane binder was not really his at all — "the information at issue is the agency's information, obtainable under [the Freedom of Information Act] directly from the agency. It was provided to the White House for the sole purpose of conducting a declassification review . . . ." ECF No. 18-1 at 11.

    These arguments ignore the January 19, 2021, declassification order; Mr. Meadows's memorandum to the Attorney General on January 20, 2021; and the

1

Presidential Records Act itself. The Defendants know what was in the President's Crossfire Hurricane binder; between them, they have the records in their possession; and they admit to denying Mr. Solomon access. *See* Defs.' Reply to Pl.'s Statement of Undisputed Material Facts, ECF No. 18-2 ¶¶ 10, 68–73. Therefore, Mr. Solomon is entitled to summary judgment and a writ of mandamus. Alternatively, Mr. Solomon should be given leave to conduct discovery into the facts and circumstances of the Defendants' refusal to turn over all of the former President's declassified Crossfire Hurricane records to him for review.

## I. The Defendants are bound by the declassification order

On December 30, 2020, pursuant to his prior request, former President Trump received a "binder of materials" related to the FBI's Crossfire Hurricane investigation. Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 Fed. Reg. 6,843 (Jan. 19, 2021), Mem. P. & A. Supp. Mr. Solomon's Partial Mot. Summ. J., Ex. 3, ECF No. 16-5. On January 19, 2021, Mr. Trump "determined that the materials in that binder should be declassified to the maximum extent possible," and he "directed the Attorney General to implement the redactions proposed in the FBI's January 17 submission and return to the White House an appropriately redacted copy." *Id*. This binder and its contents are Presidential records. 44 U.S.C. § 2201(2).[1] Given the declassification order, the

---

[1] The Defendants seemingly suggest that the binder was *never* a Presidential record because "it was DOJ that compiled the materials and DOJ that created the binder's contents in the first instance." Defs.' Reply Supp. Mot. Dismiss, ECF No. 14 at 10; *see also* ECF No. 18-1 at 9 ("DOJ initially provided the binder to the White House for declassification review"). After all, "the binder's contents were first created … in aid

2

Meadows memorandum, and the Defendants' acknowledgment that Circuit law looks to "*specific* instructions … either the use or disclosure of the documents" at issue, *see* ECF 18-1 at 12 (citation omitted), this case should be simple enough. The Crossfire Hurricane binder contained Presidential records meant for declassification and public release. Mr. Solomon is the former President's designated representative, and he is entitled to see them without the Defendants' extraneous redactions.

The Defendants lack legal authority for their foundational premise that Presidential records transition into agency records when the White House directs the Attorney General to make *only* Privacy Act redactions and then publicly release them. To justify stonewalling Mr. Solomon and cloaking the declassified Crossfire Hurricane records in redactions, *see* Solomon Aff., ECF 16-7 ¶¶ 32–33, the Defendants instead revisit the losing argument in *Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72, 77 (2d Cir. 2020). There, the Second Circuit rejected the contention that manifestations of presidential intent may be ignored when agencies take possession of such records. The Defendants' similar argument likewise should be rejected here.

Also, the Crossfire Hurricane records now held by the Department of Justice did not "come into the agency's possession in the legitimate conduct of its official duties." *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989). To begin with, the Defendants are bound by the declassification order. Agency action to the contrary is *ultra vires* and inconsistent with the "legitimate conduct of its official

---

of an FBI investigation." *Id.* But this cannot truly be the Defendants' position. *See* 44 U.S.C. § 2201(2) ("created *or received* by the President") (emphasis added).

3

duties," because such an order may not be lawfully disregarded without subsequent *Presidential* action. The Defendants argue that Mr. Solomon, acting on behalf of the former President, is "asking the Court to disregard [the Freedom of Information Act], a federal statute, and to enforce the former President's [declassification order]." ECF No. 18-1 at 23. This is precisely right. A chief of staff memorandum cannot overrule a Presidential directive; empower an agency to ignore the President's wishes; or shield Presidential records from the President's review.

Application of the four-factor "gloss test" established by *Judicial Watch, Inc. v. U.S. Secret Serv.,* 726 F.2d 208, 218 (D.C. Cir. 2013), produces a similar result. Even assuming that there is a colorable factual dispute with respect to the White House's intent to retain or relinquish control over the Crossfire Hurricane records when they were sent to the Attorney General for redaction and release, the undisputed facts are that the Attorney General did *not* have the ability to use and dispose of the binder as he saw fit, the Department of Justice's personnel did not "read or rely" on the binder for their work, and there is no evidence that the binder or its records were ever "integrated into the agency's record system or files."

## II. The Defendants are bound by the Presidential Records Act

The declassification order demonstrates that the Crossfire Hurricane records, received in the White House on December 30, 2020, were Presidential records. This order, Mr. Meadows's memorandum, and the contemporaneous statements made by Mr. Meadows and the former President to Mr. Solomon[2] further demonstrate that

---

[2] To avoid Mr. Solomon's affidavit, which reports contemporaneous statements of intent made to *him* by the former President and Mr. Meadows as well as his personal

4

the declassified records in the binder were meant for public release without Freedom of Information Act redactions. Mr. Solomon has lawfully requested access, and the Defendants should be ordered to comply.

The Defendants' emphasis on 44 U.S.C. § 2201(2)(B)(i), ECF No. 18-1 at 6 ("providing 'Presidential records' 'does not include any documentary materials that are … official records of an agency'") and focus on whether Mr. Meadows made Presidential records disappear should not obscure the simple fact that Mr. Solomon requested Presidential records as a designated representative, and the Archives has a clear duty to make them available.

By way of misdirection, the Defendants argue that Mr. Meadows "*created* the current [sic] version of the binder," when he sent records to the Department of Justice on January 20, 2021. *See* ECF No. 18-1 at 10 (emphasis added). The Defendants distinguish the "current [sic] version of the binder" as a "different, diminished set of materials" that "was not the same as the 'binder' that existed at the White House" because Meadows transferred "only 'the bulk of the binder'" to the Department of Justice. *Id.* at 7. But that is not what Mr. Solomon requested.

Mr. Solomon requested "every document that was declassified by [President Trump's] order and included in the binder" — i.e., the "binder of documents from the

---

observations, the Defendants assert it contains essentially nothing but inadmissible hearsay. *Compare* ECF 16-7 ¶¶ 5–9, 11–15, 17, 28 *with* ECF 18-1 at 12–13, ECF 18-2 ¶¶ 15, 17–29, 37, 39, 43. But Mr. Solomon is an award-winning journalist. To the extent his affidavit contains hearsay, the residual exception in Fed. R. Evid. 807(a) should apply. In any event, Mr. Meadows himself made it clear that the point of the entire declassification exercise was to provide the American people with transparency. ECF 16-7 ¶ 28 (linking Meadows interview).

Russia investigation that the President declassified with an order in his last few days in office." E-mail from John Solomon to Gary Stern (June 22, 2022), ECF No. 16-4 at 14. He did not request the "different, diminished set of materials" that Mr. Meadows sent to the Department of Justice.

In acknowledging Mr. Solomon's request under the Presidential Records Act, the Archives stated it did not have possession of the physical binder, but it suggested that—if only it were able to differentiate the copies it possessed and determine their classification status—the requested records would be made available to Mr. Solomon. *See* E-mail from Gary Stern to John Solomon (June 23, 2022), ECF No. 16-4 at 13–14.[3] The fact that any copies at all from the binder were sent to the Archives confirms that its contents were always intended to be Presidential records. At that moment, there was no doubt that the requested records ("every document that was declassified by [President Trump's] order and included in the binder") were Presidential records, and the Archives expressed no theory that the requested records were not Presidential records. Instead, the Archives could not make the requested records available to Mr. Solomon because it did not possess them in an adequately differentiated way. *Id.*

---

[3] The Defendants deny that its justifications for denying Mr. Solomon access to the records changed over time. ECF No. 14 at 13–15; ECF No. 18-1 at 23. However, the Archives did not reveal that the binder at the Department of Justice was subject to ongoing Freedom of Information Act litigation until July 12, 2022. The mere fact that the binder was transferred to the Department of Justice is not sufficient to support the Defendants' argument because records in an agency's possession can clearly still be subject to presidential control. Instead, the Defendants further argue that the records in the binder at the Department of Justice are subject to the Freedom of Information Act, so they cannot be Presidential records.

The Archives had a "responsibility for the custody, control, and preservation of, and access to" the Presidential records. 44 U.S.C. § 2203(g)(1). Its failure to preserve and maintain the records and/or its copies in an adequately differentiated form does not excuse it from complying with its mandate to make them available to the former President or his designated representative. *See* 44 U.S.C. § 2205(3) ("the Presidential records of a former President *shall* be available") (emphasis added).

To help the Archives meet its statutory duty, Mr. Solomon recommended that the Archives simply compare its own copies with the copies at the Department of Justice to determine their classification status. E-mail from John Solomon to Gary Stern (July 7, 2022), ECF No. 16-4 at 12. However, the Archives denied that possibility. E-mail from Gary Stern to John Solomon (July 12, 2022), ECF No. 16-4 at 11.[4] Despite the great lengths that it has gone to recover the full set of Presidential records from the former President's term in office,[5] the Archives chose not to look beyond the box of undifferentiated copies it had in its possession here. Accordingly, Mr. Solomon now requests the Court to order the Department of Justice to return the records to the Archives so they may be made available to him. Complaint at 9.

---

[4] On July 12, 2022, the Archives justified its denial based on the fact that the binder was in the custody of the Department of Justice and subject to ongoing Freedom of Information Act litigation *and* on the Presidential Records Act ("under the Presidential Records Act, the Trump Presidential records are not available for public access requests and review, under either [the Freedom of Information Act] or the Mandatory Declassification Review (MDR) procedures until five years after the President leaves office. See 44 U.S.C. 2204(b)(2)(A)"). Apparently, the Archives had not yet taken the position that the records requested by Mr. Solomon were not Presidential records.

[5] *See, e.g., February 8, 2022, Statement*, NATIONAL ARCHIVES, https://bit.ly/465MdxG.

The FBI's Freedom of Information Act releases are not the records he requested. *See* ECF No. 16-1 at 19. For example, the Carter Page FISA Application begins with: "The United States of America hereby applies to this Court for authority to conduct **electronic surveillance and physical search**." ECF No. 16-8, Solomon Aff. App. A001. The FBI's Freedom of Information Act release, however, redacts the phrase "**electronic surveillance and physical search**." ECF No. 16-9, Solomon Aff. App. B001. The FBI justifies its redaction under Freedom of Information Act exemptions 3 and 7(E). This is an absurd abuse of government power—it reflects both a calculated disregard for the government's Freedom of Information Act duties and a deep contempt for the American public's right to know. Regardless, Mr. Solomon did not request a version of the Crossfire Hurricane binder with over-broad (or any) Freedom of Information Act exemptions.

The Defendants' argument that the Presidential Records Act excludes "records subject to the [Freedom of Information Act] from the class of materials that may be treated as presidential records" is more misdirection. ECF No. 18-1 at 6 (citing *Armstrong v. Exec. Off. of the President* ("*Armstrong II*"), 1 F. 3d 1274, 1292; 44 U.S.C. § 2201(2)(B)(i)). An agency's creation of a version of records subject to the Freedom of Information Act negates the existence of the Presidential records from which it derived no more than the creation of Presidential records negates the existence of federal records from which the Presidential records derived.[6] *Cf. Tax Analysts*, 492

---

[6] If the Defendants' transmutation theory were accepted, then the FBI's original investigatory materials necessarily would have ceased to be federal records once President Trump received them, and not subject to Freedom of Information Act

U.S. at 152–154 (1989) ("Congress undoubtedly was aware of the redundancies that might exist when requested materials have been previously made available … Congress knew that other statutes created overlapping disclosure requirements"). The court in *Armstrong II* reasoned that it could review whether a record was either a Presidential Record or a federal record because the statutory limitation at 44 U.S.C. § 2201(2)(B)(i) "prevent[s] the PRA from becoming a potential presidential *carte blanche* to shield materials from the reach of the [Freedom of Information Act]." 1 F.3d at 1292. By conflating the FBI's Freedom of Information Act release with the Presidential records that Mr. Solomon has lawfully requested, the Defendants do violence to both the Freedom of Information Act and the Presidential Records Act. *Cf.* ECF No. 18-1 at 15–16 quoting *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 603 (D.C. Cir. 2004).

The Defendant Archives, when motivated, can be exceedingly diligent in searching for Presidential records. Here, however, it claims that finding the declassified Crossfire Hurricane records and making them available to Mr. Solomon is too difficult. The Defendant Department of Justice at least admits to having a substantial portion of the records. However, it claims the President's binder is no more. And it is not clear whether the former has ever asked the latter to deliver the former President's records to it. ECF No. 18-2 ¶ 54. As a matter of law, Mr. Solomon is entitled to a writ of mandamus.

---

disclosure. See note 1, *supra*, regarding the Defendants' position regarding the origins of the documents.

### III. The constitutional issues here are significant

The Defendants claim that their decision to deny Mr. Solomon access to the Crossfire Hurricane binder in its original form has no constitutional import. ECF No. 18-1 at 19. But at stake here is the President's personal constitutional prerogative, as a Constitutional officer, not merely as an "Executive Branch" official, *see* ECF No. 18-1 at 20, to at least see his own records.

The Defendants simply sidestep the difficult constitutional questions raised by their proposed construction of the Presidential Records Act and the Freedom of Information Act. As Mr. Solomon has explained, he believes that the Defendants have misconstrued the relevant law. ECF No. 16-1 at 17–18. He also believes that the constitutional avoidance canon obviously applies here. *See Doyle,* 959 F. 3d at 78.

### IV. If not a writ of mandamus, then Mr. Solomon should be granted discovery

Mr. Solomon believes he has demonstrated that he is entitled to partial summary judgment and that a writ of mandamus should be issued. However, if the Court is not yet willing to issue a writ of mandamus, then it should authorize Mr. Solomon the opportunity to conduct expedited written discovery and depositions to resolve (apparently) disputed issues. *See, e.g.,* ECF No. 18-2 ¶¶ 10, 12, 15–18, 21, 41, 44, 53–54, 68–73. Such discovery could include:

1. Interrogatories to identify the person(s) at the Department of Justice responsible for the handling and disposition of the Crossfire Hurricane binder received from Mr. Meadows so that they may be deposed.
2. Requests for production of all communications between the Archives and the Department of Justice regarding the Crossfire Hurricane binder to identify the person(s) involved so that they may be deposed.

3. Requests for production of all communications between the Defendants and the Executive Office of the President to identify persons involved so that they may be deposed.

4. Depositions of Gary Stern, a designated representative of the Department of Justice, and individuals identified in response to items 1 through 3 above.

## Conclusion

Mr. Solomon, as the former President's authorized representative, has the right to review all the declassified Crossfire Hurricane records received by the White House on December 30, 2020. The Defendants know what was in the President's Crossfire Hurricane binder; between them, they have the records in their possession; and they admit to denying Mr. Solomon access. *See* ECF No. 18-3 ¶¶ 10, 68–73. They should be ordered to deliver them up.

Dated: September 28, 2023          Respectfully submitted,

*/s/ Michael Ding*
Reed D. Rubinstein (D.C. Bar No. 400153)
James K. Rogers (AZ Bar No. 027287)*
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: reed.rubinstein@aflegal.org
E-mail: james.rogers@aflegal.org
E-mail: michael.ding@aflegal.org

*Application for Pro Hac Vice forthcoming

## **CERTIFICATE OF SERVICE**

     I hereby certify that on this 28th day of September, 2023, a true and correct copy of this document was served electronically by the Court's CM/ECF system to all counsel of record.

                                       */s/ Michael Ding*
                                       Michael Ding