UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN SOLOMON,

        *Plaintiff,*

v.

MERRICK GARLAND, *et al.*

        *Defendants.*

Case No. 1:23-cv-00759-RJL

**THE PLAINTIFF'S RESPONSE TO THE DEFENDANTS' STATEMENT OF MATERIAL FACTS (ECF No. 18-3) AND REPLY TO THE DEFENDANTS' RESPONSE TO HIS STATEMENT OF MATERIAL (ECF No. 18-2)**

The Plaintiff respectfully submits his response to the Defendants' Statement of Material Facts, ECF No. 18-3, and his reply to the Defendants' Response to his Statement of Material Facts, ECF No. 18-2.

Response to ECF No. 18-3

1. On January 19, 2021, then-President Trump issued a Memorandum ("January 19, 2021, Memorandum") concerning a binder of materials related to the FBI's Crossfire Hurricane investigation. Mem., Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 FR 6843 (Jan. 19, 2021), Pl.'s Mot., Ex. 3, ECF No. 16-5 at 1.

**Response:** Undisputed.

2. The records in the binder addressed by the January 19, 2021, Memorandum were federal records that DOJ had provided to the White House at the President's request. Mem., Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 FR 6843 (Jan. 19, 2021), Pl.'s Mot., Ex. 3, ECF No. 16-5 at 1.

**Response:** Undisputed that the Department of Justice provided the White House with a binder of materials related to the Federal Bureau of Investigation's Crossfire Hurricane investigation and that the "materials" included documents or records.

However, Mr. Solomon lacks sufficient knowledge or information to determine whether the referenced records were "federal records" as defined at 44 U.S.C. § 3301.

    3.    In the January 19, 2021, Memorandum, President Trump noted that he had "requested the documents so that a declassification review could be performed" and that—with the exception of the portions that the FBI in consultation with the Intelligence Community had determined "most crucial" to protect—he was ordering declassification of the materials in the binder. Mem., Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 FR 6843 (Jan. 19, 2021), Pl.'s Mot., Ex. 3, ECF No. 16-5 at 1.

**Response:** Undisputed that the declassification order contains the quoted language.

    4.    The January 19, 2021, Memorandum, clarified however, that the decision to disclose materials in the binder "[did] not extend to materials that must be protected from disclosure pursuant to orders of the Foreign Intelligence Surveillance Court and [did] not require the disclosure of certain personally identifiable information or any other materials that must be protected from disclosure under applicable law." Mem., Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 FR 6843 (Jan. 19, 2021), Pl.'s Mot., Ex. 3, ECF No. 16-5 at 1.

**Response:** Undisputed that the declassification order contains the quoted language.

    5.    On January 20, 2021, then-Chief of Staff Meadows returned the "bulk of the binder" to DOJ with instructions that DOJ conduct a Privacy Act review and then release the remaining material with redactions applied. Jan. 20, 2021, Mem., Pl.'s Mot., Ex. 4, ECF No. 16-6 at 1.

**Response:** Undisputed that the referenced exhibit contains the quoted language.

    6.    Mr. Meadows indicated that the portions of the binder that he returned to DOJ included all those "that appear to have a potential to raise privacy concerns." Jan. 20, 2021, Mem., Pl.'s Mot., Ex. 4, ECF No. 16-6 at 1.

**Response:** Undisputed that the referenced exhibit contains the quoted language.

    7.    NARA's General Counsel explained that NARA received and maintains as Presidential records a box of approximately 2700 pages, which

includes multiple copies of documents that appear to be from the binder. Email from Gary Stern to Kash Patel (July 14, 2022), Pl.'s Mot., Ex. 2, ECF No. 16-4, at 9; Email from Gary Stern to John Solomon (June 23, 2022), Pl.'s Mot., Ex. 2, ECF No. 16-4, at 13–14.

**Response:** Undisputed.

8. The box of approximately 2700 pages maintained by NARA includes "instances of the same document being redacted differently," and some documents without "the required declassification marking." Email from Gary Stern to Kash Patel (July 14, 2022), Pl.'s Mot., Ex. 2, ECF No. 16-4, at 9; Email from Gary Stern to John Solomon (June 23, 2022), Pl.'s Mot., Ex. 2, ECF No. 16-4, at 13–14.

**Response:** Undisputed that the referenced emails contain the quoted language.

9. The contents of the binder that Mr. Meadows returned to DOJ are the subject of a Freedom of Information Act lawsuit with DOJ. Email from Gary Stern to Kash Patel (Aug. 17, 2022), Pl.'s Mot., Ex. 2, ECF No. 16-4, at 1.

**Response:** Undisputed that the referenced emails report a Freedom of Information Act lawsuit over Crossfire Hurricane records. Mr. Solomon disputes the assertion that Mr. Meadows "returned" a binder to the Department of Justice.

10. Most of the contents of the binder have now been released in redacted form on the FBI's FOIA reading room. See FBI Records: The Vault, Crossfire Hurricane, available at https://vault.fbi.gov/crossfire-hurricane-part-01.

**Response:** Disputed as unsupported by admissible evidence. Mr. Solomon does not know how many pages of records were in the referenced binder and therefore has no way of knowing whether "most of the contents" have been released in redacted form.

<u>Reply to ECF No. 18-2</u>

The Plaintiff respectfully replies to the Defendants' Response to his Statement of Material Facts.

10. The President intended to make the binder public so that the American public would know what its government had done. Ex. 5 ¶¶ 15, 17–19, 28.

**Response:** Disputed. This statement is unsupported by admissible evidence; this statement appears in the cited paragraphs as hearsay or hearsay within hearsay, comprising Plaintiff's statements of Mr. Meadows's account of the former President's statements. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 15. Defendants note that the subjective views or intentions of the President—versus the instructions actually provided by his Chief of Staff—would be immaterial even if submitted in admissible form.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* Solomon Aff., ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. Mr. Solomon notes that the President's intentions, as expressed in the declassification order, are relevant to the White House's intent with respect to the President's Crossfire Hurricane records and arguably dispositive of an important legal issue in this case.

12. Among other things, the binder contained embarrassing information about the Bureau's officials and about the government's conduct in the case. Ex. 5 ¶ 15.

**Response:** Disputed. This statement is unsupported by admissible evidence, as the cited paragraph comprises hearsay conveying Plaintiff's account of speculation by Mr. Meadows. Defendants also dispute that the content of the binder would be material even if admissible.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. The contents of the binder are relevant and material because they go to the

Defendants' motive in refusing to grant Mr. Solomon access to unredacted declassified records in compliance with the Presidential Records Act.

15. At this point, the binder contained about 2,700 pages and was approximately ten inches thick. Ex. 5 ¶ 9.

**Response:** Disputed as unsupported by the cited evidence. The cited paragraph is silent as to the page count of the binder, and the preceding paragraph of Plaintiff's declaration describes the binder as "a binder of several hundred pages of documents." *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8. Undisputed to the extent Plaintiff states that "[his] recollection" is that the binder was "about 10 inches thick," but Defendants dispute the characterization of this fact as material.

**Reply:** This fact is relevant and material to question whether the Defendants have disclosed *all* the declassified Presidential Crossfire Hurricane records.

17. At all times relevant, the President considered the binder a Presidential record and intended to maintain control over it. Ex. 5 ¶ 17.

**Response:** Disputed. This statement is unsupported by the cited evidence, which does not state the former President considered the binder a Presidential record and intended to maintain control over it. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 17. Moreover, the cited description of the former President's views comprises inadmissible hearsay, and the subjective views or intentions of the President—versus the instructions actually provided by his Chief of Staff—would be immaterial even if submitted in admissible form.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material because the President's intentions are highly relevant to, and arguably ultimately dispositive of, a key legal question in this case.

18. Sometime in mid-January 2021, White House Chief of Staff Mark Meadows informed Mr. Solomon that former President Trump was going to authorize the declassification of Crossfire Hurricane investigation documents. *Id.* ¶ 5.

**Response:** Disputed as unsupported by admissible evidence; Plaintiff's account of Mr. Meadows's statement comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 5. Defendants also dispute the materiality of this statement.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material because the President's intentions are highly relevant to, and arguably ultimately dispositive of, a key legal question in this case.

19. Meadows told him that the White House had gathered the records from agencies, that Trump was preparing a declassification order, and that the records would be made available to him and other reporters before Trump's departure from office on January 20, 2021. Id. ¶ 6.

**Response:** Disputed as unsupported by admissible evidence; Plaintiff's account of Mr. Meadows's statements comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 6. Defendants also dispute the materiality of these statements.

**Reply:** Mr. Solomon repeats his reply to the Defendants' response to ¶ 18 above.

20. In the final 48 hours before Trump left office, both the President and Meadows told Mr. Solomon that the Crossfire Hurricane binder had been declassified. *Id.* ¶ 7.

**Response:** Disputed as unsupported by admissible evidence; Plaintiff's account of Mr. Meadows's and the former President's statements comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 7. Defendants also dispute the materiality of these statements.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material to the classification status of the Crossfire Hurricane records which the Defendants have cited to deny Mr. Solomon, the President's designated representative, access and review.

21. On January 19, 2021, Meadows invited Mr. Solomon to the White House to review several hundred pages of declassified documents from the binder and to discuss a plan for the binder's release to the American public on the morning of January 20, 2021. *Id.* ¶ 8.

**Response:** Disputed as unsupported by admissible evidence; Plaintiff's account of Mr. Meadows's statements comprises inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8. Defendants also dispute the materiality of these statements.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material to the White House's intentions with respect to the President's Crossfire Hurricane records, which the Defendants have challenged.

22. Mr. Solomon quickly thumbed through the binder to understand the nature and quantity of the records after being assured by Meadows and a White House lawyer that the binder had been declassified and after being shown a copy of the President's signed declassification order. *Id.*

**Response:** Defendants dispute the materiality of this statement. Defendants also object to Plaintiff's proffered account of statements by Mr. Meadows and the unnamed White House lawyer as inadmissible hearsay. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material to the White House's intentions with respect to the President's Crossfire Hurricane records, which the Defendants have challenged.

23. Mr. Solomon saw lightly redacted versions of the fourth Crossfire Hurricane FISA warrants, a 2017 FBI 302 interview report with Christopher Steele, several tasking orders related to a second Confidential Human Source named Stefan Halper, and other documents. *Id.* ¶ 9.

**Response:** Defendants dispute the materiality of the content of the binder. Defendants also object that this statement is unsupported by admissible evidence, as Plaintiff's description of the contents of documents is hearsay, and that Plaintiff qualifies his describing "[his] recollection" of what he saw. *See* Pl.'s Mot., Ex. 5, ECF No. 16-7, ¶ 8. Finally, Defendants object that the characterization "lightly redacted" is vague and ambiguous.

**Reply:** This fact is material because it concerns the scope and contents of the relevant Presidential records. The statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28.

25. Mr. Meadows told Mr. Solomon that the White House had made the final decisions on which passages to declassify and which to keep redacted in each document. *Id.*

**Response:** Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material to the White House's intentions with respect to the Crossfire Hurricane records and to the scope and contents thereof.

26. Meadows discussed a strategy for releasing the documents to the public with Mr. Solomon via the "Just the News" website. *Id.* ¶ 11.

**Response:** Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** Mr. Solomon repeats his reply to the Defendants' response to ¶ 25 above.

27. The strategy included getting him a copy of the binder on an embargoed basis so that his staff could begin scanning it on the evening of January 19, 2021, for release the following morning. *Id.*

**Response:** Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** Mr. Solomon repeats his reply to the Defendants' response to ¶ 25 above.

28. It also included getting Mr. Solomon a smaller second set of records that he could write about that night. *Id.*

**Response:** Defendants dispute this statement as unsupported by admissible evidence; Plaintiff's proffered account of statements by Mr. Meadows is inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** Mr. Solomon repeats his reply to the Defendants' response to ¶ 25 above.

29. These records are attached as Appendix A to Mr. Solomon's affidavit.

**Response:** Defendants dispute this statement as unsupported by admissible evidence; neither Plaintiff's Affidavit, nor any other evidence, describes the origin or content of Appendix A. Defendants also dispute the materiality of this statement.

**Reply:** The origin and contents of Appendix A are described precisely in Mr. Solomon's affidavit at ¶¶ 11, 12, 32, and 33. This fact is material to the scope and contents of the President's Crossfire Hurricane records and probative of the Defendants' alteration of those records with Freedom of Information Act redactions.

43. The President did not know that Mr. Meadows was taking such action. *Id.* ¶ 17.

**Response:** Disputed as unsupported by admissible evidence; Plaintiff's account of the former President's knowledge is based on inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** This statement is supported by evidence admissible under Fed. R. Evid. 803(1)–(3) and (5), and under Fed. R. Evid. 807. Mr. Meadows is an award-winning journalist who was working on a story regarding the Crossfire Hurricane records. His affidavit's account of his conversations with the former President and Mr. Meadows occurred during the course thereof. *See* ECF No. 16-7 at ¶¶ 2–8, 11–15, 16–19, 28. This fact is material to the President's intentions with respect to control over his Crossfire Hurricane records and to the Department of Justice's lawful authority.

44. The President did not authorize Mr. Meadows to send the binder to the Department of Justice for Privacy Act redactions or to modify his directions with respect to it. *Id.*

**Response:** Disputed as unsupported by admissible evidence; this statement is based on inadmissible hearsay. Defendants also dispute the materiality of this statement.

**Reply:** Mr. Solomon repeats his reply to the Defendants' ¶ 44 response above.

Dated: September 28, 2023            Respectfully submitted,

*/s/ Michael Ding*
Reed D. Rubinstein (D.C. Bar No. 400153)
James K. Rogers (AZ Bar No. 027287)*
Michael Ding (D.C. Bar No. 1027252)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave SE #231
Washington, D.C. 20003
Tel.: (202) 964-3721
E-mail: reed.rubinstein@aflegal.org
E-mail: james.rogers@aflegal.org
E-mail: michael.ding@aflegal.org

*Application for Pro Hac Vice forthcoming