IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN SOLOMON,

        Plaintiff,

v.

MERRICK GARLAND, *et al.*,

        Defendants.

No. 23-cv-00759-RJL

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff's response to the Defendants' motion for summary judgment, *see* ECF No. 21, ("Pl's Opp'n") confirms that there is no genuine dispute as to any material fact in this case. As explained in Defendants' motion, *see* ECF No. 19-1 (Defs' Mot."), a single legal issue is determinative here. Both Plaintiff's replevin claim and his request for a writ of mandamus depend on Plaintiff's ability to establish—clearly and indisputably, for the latter—that the binder at the heart of this litigation is a Presidential record.[1] This he cannot do. In light of the undisputed content of Mr. Meadows's January 20, 2021, Memorandum, and the undisputed fact

---

[1] Plaintiff premises his standing in this case on his status as former President Trump's designated Presidential Records Act (PRA) representative, authorized to access records of the former administration under 44 U.S.C. § 2205(3). *See* Compl., ECF No. 1, ¶¶ 3, 5, 9, 13, 34, 39. As of September 19, 2023, however, Plaintiff is no longer a designated PRA representative. On that date, Mr. Trump appointed two representatives, and expressly stated that "[t]his letter supersedes all prior correspondence on this topic in that the representatives named herein are not in addition to, but replace, any prior designee." *See* Letter from President Trump (Sept. 19, 2023), *available at* https://www.archives.gov/files/foia/pdf/trump-pra-representatives-designation-letter-09-19-2023.pdf. Accordingly, Plaintiff currently lacks standing, and this case can be dismissed on that ground alone.

of the binder's transmittal to DOJ, the binder fulfills every element of the test for an agency record. As a result, the Presidential Records Act excludes it from the definition of a Presidential record. The former President's declassification memorandum in no way alters this conclusion. Nor do Plaintiff's disagreements with Mr. Meadows's record management decisions or references to "difficult constitutional questions," Pl.'s Opp'n at 10, for which he does not even identify a relevant constitutional provision.

The record in this case amply demonstrates that the Defendants are entitled to summary judgment as to both of Plaintiff's claims. Plaintiff's requests for discovery for unspecified purposes should be denied because he has not identified any way in which the information he might learn via discovery could alter the landscape as to any material fact in this case.

In sum, for all the reasons explained herein and in Defendants' motion, if this Court does not grant the Defendants' pending motion to dismiss, the Court should enter summary judgment for the Defendants.

## ARGUMENT

### I. Plaintiff Has Adduced No Facts Raising a Genuine Dispute as to the Status of the Binder as an Agency Record.

In his response to Defendants' motion, Plaintiff disputes neither the centrality of the binder's status—*i.e.,* that this matter turns on the question of whether the binder is a Presidential or agency record—nor the applicable tests under the Presidential Records Act and the case law. *See* Pl's Opp'n, *generally*. Plaintiff acknowledges that the Presidential Records Act's definition of "'Presidential records' 'does not include any documentary materials that are . . . official

records of an agency.'"  Pl.'s Opp'n at 5 (quoting 44 U.S.C. § 2201(2)(B)(i)).[2]  Plaintiff also does not dispute that the Supreme Court in *Tax Analysts* defined official records of an agency as those that the agency "obtained" "in the legitimate conduct of its official duties."  *See* Pl.'s Opp'n at 3 (quoting *see U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989)).

Plaintiff's sole response with respect to the determinative *Tax Analysts* test is his argument that the agency did not—after having received the binder from Mr. Meadows—release the binder to the public with only the redactions contemplated by the former President in the January 19, 2021, declassification memorandum.  *See* Pl.'s Opp'n at 3–4.  Plaintiff overlooks that the January 19, 2021, memorandum expressly provides that it "[was] not intended to, and [did] not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."  Mem., Declassification of Certain Materials Related to the FBI's Crossfire Hurricane Investigation, 86 FR 6843 (Jan. 19, 2021), Pl.'s Mot., Ex. 3, ECF No. 16-5.  Thus, Plaintiff's effort to have this Court enforce his understanding of that memorandum's provisions is barred by the memorandum's own terms.[3]

Moreover, Plaintiff's arguments concerning the agency's handling of the binder *after* Mr. Meadows transmitted the binder to the agency are wholly inapposite.  The *Tax Analysts* test focuses on how an agency obtained the subject materials—"[b]y control we mean that the

---

[2] Plaintiff waves the statute aside, and urges it "should not obscure the simple fact" that Plaintiff "requested Presidential records as a designated representative."  *Id.*  This argument overlooks that, in light of the statutory definition, the materials he requested are not Presidential records in the first place.

[3] Nor can the Plaintiff use the instant action as a vehicle to challenge withholdings in another case under the Freedom of Information Act (FOIA).  *See* Pl's Opp'n at 8.  This is not a FOIA case, and, in any event, Plaintiff has no standing to challenge exemptions that were claimed in releases responsive to a FOIA request that Plaintiff did not make.

materials *have come into the agency's possession* in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145 (emphasis added). As to this, there is no dispute. The agency's receipt of the binder from Mr. Meadows plainly occurred "in connection with the transaction of public business," *id.*, and Plaintiff does not argue otherwise.

Nor does Plaintiff identify a genuine dispute in connection with the additional four factors provided by the D.C. Circuit in *Judicial Watch* to assist in the application of the *Tax Analysts* test. Defendants enumerated those factors in their motion: "1) the intent of the document's creator to retain or relinquish control of the records; 2) the ability of the agency to use and dispose of the record as it sees fit; 3) the extent to which agency personnel have read or relied upon the document; and 4) the degree to which the document was integrated into the agency's record system or files." *Judicial Watch, Inc.*, 726 F.3d at 218.

As to the first factor, Plaintiff proposes only that the Court "assum[e] a colorable factual dispute with respect to the White House's intent to retain or relinquish control." Pl.'s Opp'n at 4. But Plaintiff's unsupported statement that there is a genuine factual dispute does not make it so. As Defendants explained in their motion, "intent" in this context refers to the intent expressed in specific instructions provided to the agency. *See* Defs' Mot. at 12 (citing case law). There is no dispute in this case as to the instructions that Mr. Meadows provided to DOJ when he transmitted the binder—they are recorded in a memorandum that is part of the record in this case and that Plaintiff relies upon. *See* Jan. 20, 2021, Mem., Pl.'s Mot., Ex. 4, ECF No. 16-6 at 1. Plaintiff's contention that Mr. Meadows transmitted the binder without the authorization or consent of the former President is entitled to no weight on summary judgment, given that it is unsupported by

any admissible evidence.[4]  And, in any event, Plaintiff cites to no case in which an official's *subjective* intention was given any weight by a Court in the application of this test.

As to the second factor, Plaintiff continues to argue that "the undisputed facts are that the Attorney General did *not* have the ability to use and dispose of the binder as he saw fit," Pl.'s Opp'n at 4, and overlooks entirely the precedent that makes clear this factor focuses on whether an agency may *disclose* the subject record, or whether there are restrictions preventing it from doing so.  *See* Defs' Mot. at 14–16 (discussing case law).  To take one example, the *Doyle* case to which Plaintiff refers in his response, *see* Pl.'s Opp'n at 3, states unequivocally:  "At stake here is the President's constitutional prerogative of maintaining *secrecy* as it relates to the confidentiality of his conversations and correspondence."  *Doyle v. United States Dep't of Homeland Sec.*, 959 F.3d 72, 77 (2d Cir. 2020) (quotation omitted) (emphasis added).[5]  Plaintiff

---

[4] Plaintiff proposes that the Court admit the hearsay in his affidavit under the residual exception to the hearsay rule because he "is an award-winning journalist."  *See* Pl.'s Opp'n at 4–5 n.2.  He offers no citation in support of such a broad interpretation of the exception to the rule excluding hearsay.  Moreover, to invoke the residual exception on which Plaintiff relies, a party must show the proffered hearsay "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Fed. R. Evid. 807(a)(2).  Plaintiff attempts no such showing here, and cannot make such a showing, since the proffered hearsay comprises statements that he asserts the declarants made *to him*.

In addition to his citation to the residual exception to the hearsay rule, Plaintiff also refers to statements "made by Mr. Meadows himself," Pl.'s Opp'n at 4–5 n.2, implying that those statements comprise admissible evidence.  But such statements are themselves out of court statements offered "to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and therefore are themselves inadmissible hearsay.  And, even if they were admissible, the cited statements would be immaterial; there is no dispute that the former President intended to declassify some portion of the contents of the binder, but that has no bearing on whether the binder became an agency record when his Chief of Staff transmitted the bulk of it to DOJ with instructions that the agency exercise its discretion in applying redactions to the binder and then release it to the public.

[5] Plaintiff's reliance on *Doyle* is inapposite.  In that case, the Second Circuit addressed visitor logs for the White House complex and President's residence, where the "intent" of the White House to control the subject records was manifested in a memorandum of understanding

5

provides no support for his novel interpretation that *any* instructions as to a record's subsequent use would be germane to this factor, as opposed to restrictions on disclosure. As to the latter— the only interpretation of the second factor that is supported by the case law, *see* Defs' Mot. at 14–16 (discussing case law)—there is no evidence that there were restrictions on disclosure of the binder in this case. Indeed, the instructions were to the contrary.

As to the third and fourth factors, Plaintiff asserts that "the undisputed facts" are that DOJ personnel did not read or rely on the binder for their work, and that "there is no evidence that the binder or its records were ever integrated into the agency's record system or files." Pl.'s Opp'n at 4. But Plaintiff cannot dispute that the binder consists of materials created by FBI, s*ee* 86 FR 6843 (Jan. 19, 2021), and that agency personnel therefore would have created, read, and relied upon the binder's contents. And, as Defendants noted in their motion, the very fact that the binder is now being processed under FOIA demonstrates that it was integrated into agency record systems.

In sum, the undisputed facts demonstrate that the binder comprises an agency record. In light of this, it cannot be a Presidential record and the Court should enter judgment for Defendants as to both of Plaintiff's claims.

### II. Plaintiff Cannot Salvage His Claims by Challenging White House Record Management Decisions.

At bottom, Plaintiff is asking this Court to unwind several records management decisions made by the former White House, including the decision to send the binder to DOJ; the decision

---

(MOU) that stated the records would "remain under the exclusive ownership, control, and custody of the President, Vice President, or originating [Executive Office of the President] component." *Doyle*, 959 F.3d at 74 (quoting MOU). The contrast between that case and Mr. Meadows's transmittal memorandum in this case only serves to underscore that the White House relinquished control of the subject records here.

6

not to retain an exact copy of the binder that the then-President reviewed; and the decision to remove records from the binder the former President reviewed and thereby create a new version of the binder when returning it to DOJ on January 20. Plaintiff claims he is entitled to access the binder as it existed when former President Trump reviewed it, and demands that this Court order Defendants to try to reconstruct that version. *See* Pl's Opp'n at 5–6. Such relief would be barred by Circuit precedent and contrary to the terms of the Presidential Records Act.

First, there is no jurisdiction to review "'creation, management, and disposal' decisions" of the White House under the Presidential Records Act. *Armstrong v. Exec. Office of the President* ("*Armstrong II*"), 1 F.3d 1274, 1292 (D.C. Cir. 1993); *see also Citizens for Resp. & Ethics in Washington* (*CREW*) *v. Cheney*, 593 F. Supp. 2d 194, 217 (D.D.C. 2009). Mr. Meadows and other members of the Administration were free to retain the precise version that the then-President reviewed, or to make a copy of that version, to retain as a Presidential record. They chose not to. Under binding precedent, that determination is not reviewable.

But even if the Court's review could reach such day-to-day records management decisions of the White House (which it cannot), there would be no basis to order reconstruction of the version of the binder that Mr. Meadows chose to take apart (if it were even possible). As the Second Circuit recognized in *Doyle*, the Presidential Records Act provides the President with unilateral authority to manage his records while in office. *Doyle*, 959 F.3d at 80 (citing 44 U.S.C. § 2203).[6] There is simply no basis in the law for Plaintiff's apparent position that the

---

[6] Especially in light of the incumbent President's broad latitude to manage Presidential records while in office, 44 U.S.C. § 2203, Plaintiff is plainly mistaken in his apparent position that, once a record becomes a Presidential record, its status becomes frozen and it cannot become an agency record again. *See* Pl's Opp'n at 2. Plaintiff apparently acknowledges that a document that begins as an agency record may become a Presidential record when received by the White House. *See id.* at 2–3 n.1. He supplies no reason why a Presidential record cannot then become

Court can order NARA to try to reconstruct a record that members of a prior Presidential Administration, during their time in office, chose not to retain. Especially on a petition for mandamus relief, which requires a clear and indisputable right to relief, Plaintiff's request should be denied.

### III. Plaintiff's Claims Implicate No Constitutional Issues.

Plaintiff contends that his claims raise constitutional issues based on "the President's personal constitutional prerogative . . . to at least see his own records." Pl.'s Opp'n at 10. Plaintiff is mistaken. To begin, at issue here are the records created during the Administration of a former President, rather than the current President. A former President's right to access records created during his or her Administration is guaranteed by statute, s*ee* 44 U.S.C. § 2205(3), not the Constitution.[7] Moreover, Plaintiff's construction assumes the conclusion that the records at issue *are* Presidential records in the first place; in the instant case, that assumption is contrary to the facts. *See supra* at 2–6.

### IV. The Court Should Deny Plaintiff's Request for Discovery.

Finally, the Court should deny Plaintiff's request for discovery. To forestall the entry of summary judgment, under Federal Rule of Civil Procedure 56(d), Plaintiff must demonstrate "with sufficient particularity . . . why discovery [is] necessary." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (quotation omitted). Indeed, Rule 56(d) requires Plaintiff to submit an affidavit that satisfies three criteria: (1) "it must outline the particular facts he intends

---

an agency record when received by an agency. *See id.*, *generally*. To the contrary, the controlling case law makes plain that it can. *See* Defs' Mot. at 17–19.

[7] Plaintiff also errs in referring to the records as the former President's "own records." Pl.'s Opp'n at 10. The Presidential Records Act vested "complete ownership, possession, and control of Presidential records" solely in the United States. 44 U.S.C. § 2202.

to discover and describe why those facts are necessary to the litigation"; (2) "it must explain why he could not produce the facts in opposition to the motion for summary judgment"; and (3) "it must show the information is in fact discoverable." *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012) (quotations and citations omitted). "The information identified must offer a 'reasonable basis to suggest that discovery' will bear out its claims." *Ramos v. Lynch*, 267 F. Supp. 3d 39, 45 (D.D.C. 2017) (quoting *Carpenter v. Fed. Nat'l Mortg. Ass'n*, 174 F.3d 231, 237-38 (D.C. Cir. 1999)). The D.C. Circuit has cautioned, moreover, that "[i]t is . . . incorrect to conclude" that Rule 56(d) requests should be granted "more often than not;" rather, each request must be resolved "based on [the] application of the *Convertino* criteria to the specific facts and circumstances presented in the request." *United States ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 26–27 (D.C. Cir. 2014).

Plaintiff here has neither submitted the affidavit that would be required to attempt to satisfy Rule 56(d)'s requirements, nor even supplied the information required under D.C. Circuit precedent in his brief. That is, although Plaintiff concludes his opposition with a sweeping list of what discovery "could" include in this case, he does not identify any facts in the service of which he proposes to conduct such discovery. The facts germane to the determination of whether the binder that Mr. Meadows transmitted to DOJ is an agency record already are in the record. The case law makes plain that the determinative factors are whether DOJ received the binder in the legitimate conduct of its official duties and the instructions that the White House provided to DOJ with the binder's transmission. *See supra*.

The Plaintiff does not contend that the discovery he would conduct would have any bearing on these matters. To the contrary, the "(apparently) disputed" issues that he would address are as far-ranging as, for example, the former President's subjective intent—which, in

9

any event, could hardly be gleaned from deposition of current government officials—and the Plaintiff's assertion that "The Defendants say that the Crossfire Hurricane binder is an agency record subject to the Freedom of Information Act and that Mr. Solomon has no right to it under the Presidential Records Act." *See* Pl.'s Opp'n at 10 (citing ECF No. 18-2, ¶¶ 10, 73). Plaintiff's vague argument falls far short of any showing that could satisfy the requirements of Rule 56(d), or support the extraordinary step of discovery on a request for mandamus relief.

## CONCLUSION

For all the reasons explained herein and in Defendants' motion, the Court should grant Defendants' cross-motion for summary judgment.

Dated:  October 5, 2023              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Director
Federal Programs Branch

*/s/ Julia A. Heiman*
JULIA A. HEIMAN (D.C. Bar No. 986228)
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, N.W.
Washington, DC  20005
Tel. (202) 616-8480 / Fax (202) 616-8470
julia.heiman@usdoj.gov
*Attorneys for Defendants*